UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                    Plaintiff

v.                                          Criminal Action No. 3:97-cr-24-RGJ

MAURICE NAVARRO BROOKS                                      Defendant

* * * * *

### MEMORANDUM OPINION & ORDER

Defendant Maurice Navarro Brooks ("Brooks") moves the Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) due to his sentence being an unusually long, his age at the time of his crime, his character, rehabilitation, sincere remorse and contribution, lack of danger to the community, and that he is the only available caregiver to his brother. [DE 707]. The United States responded. [DE 718]. Brooks filed a reply [DE 728]. Brooks also moves to supplement his motion with additional support of his rehabilitation and family support. [DE 731, DE 732]. The matter is ripe for resolution on the merits. For the reasons below, Brooks' Motions to Supplement [DE 731, DE 732] are **GRANTED** and Motion for Sentence Reduction [DE 707] is **GRANTED in part**.

## I.      BACKGROUND

In 1998 Brooks was convicted by a jury of nine counts of bank robbery and ten counts of using firearms during the commission of those robberies in violation of 18 U.S.C. § 924(c). [DE 20, DE 306]. Later that same year, Judge Thomas B. Russell sentenced Brooks to 2722 months incarceration or 226 years, which was later reduced to 2242 months or 186 years. [DE 306, Judgment; DE 320, Order Amending Judgment]. On appeal, the Sixth Circuit affirmed Brooks' conviction and sentence in a detailed written opinion. *United States v. Marks*, 209 F.3d 577 (6th

1

Cir. 2000). A previous pro se motion to reduce sentence was denied in 2014. [DE 525]. Then, after passage of the First Step Act, Brooks filed another motion to reduce sentence, which was also denied because the First Step Act does not apply retroactively and cannot constitute an extraordinary and compelling circumstance. [DE 641]. The court also found Brooks' other bases for extraordinary and compelling circumstances without merit and that the 18 U.S.C. § 3553(a) factors did not support compassionate release. [DE 641 at 1583].

Brooks now requests his sentence be reduced under 18 U.S.C. § 3582(c)(1)(A)(i). [DE 707]. As grounds for his motion, Brooks cites his unusually long sentence, his age at the time of his crime, his character, rehabilitation, sincere remorse, lack of danger to the community, and that he is the only available caregiver to his brother. [*Id.*]. Brooks is 48 years old and currently housed at Manchester FCI with a release date of April 9, 2157. *See* https://www.bop.gov/inmateloc/ (last accessed February 3, 2025). Brooks has served over 27 years of his sentence.

The United States objects to Brooks' motion. [DE 718]. The United States argues that the non-retroactive changes to the law under the First Step Act reducing lengths of sentences cannot be considered an extraordinary and compelling reason for sentence reduction under Sixth Circuit precedent, but that even if it could, Brooks fails to present sufficient circumstances to qualify and that the § 3553(a) factors do not support release. [DE 718].

## II.    ANALYSIS

### A.  Exhaustion of Administrative Remedies.

When considering a motion for compassionate release under § 3582(c)(1)(A), the Court determines as an initial matter whether the movant exhausted his administrative remedies. An inmate may seek compassionate release by the district court only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf

2

or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see generally United States v. Smith*, No. 6:13-CR-34-KKC, 2024 WL 3566697, at *1 (E.D. Ky. July 29, 2024).[1] The exhaustion requirement is mandatory, and the Court is bound to enforce it when it is properly invoked by the government. *United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020). It is the defendant's burden to show that he has exhausted his administrative remedies. *United States v. Pena-Lora*, No. 15-20695, 2020 WL 3886384, at *1 (E.D. Mich. July 9, 2020).

The United States does not dispute that Brooks exhausted his administrative remedies before filing the present motion by applying with the warden of his institution requesting his sentence be reduced based on the length of his sentence and change in the law. [DE 718 at 2268]. The warden denied Brooks' request. [*Id.*]  Accordingly, Brooks' administrative remedies are exhausted, and the Court considers the merits of the motion.

## B.  Sixth Circuit "Three-Step Inquiry."

"Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants that authority in certain limited circumstances. "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory." *United States v. Jones*, 980 F.3d

---

[1] Before the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), the court could not grant a motion for compassionate release unless the motion was filed by the director of the Bureau of Prisons ("BOP"). *See* 18 U.S.C. § 3582(c)(1)(A) (2017).  The First Step Act amended § 3582(c)(1)(A) to allow the court to grant a motion for compassionate release filed by the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194 § 603 (Dec. 21, 2018).

1098, 1106 (6th Cir. 2020). That said, district courts must "supply specific factual reasons for their compassionate release decisions." *Id.* at 1101-02.

After addressing exhaustion, district courts apply a "three-step inquiry" in considering a compassionate-release motion filed under § 3582(c)(1). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted). Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *McCall*, 56 F.4th at 1054 (quotations omitted). District courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking. *Elias*, 984 F.3d at 519.

The Sentencing Commission recently amended the compassionate-release policy statement to describe six categories of extraordinary and compelling reasons that individually, or in combination, may support compassionate release. The updated policy statements "provide[ ] a non-exhaustive list of various circumstances that either alone or in combination qualify as extraordinary and compelling reasons for a sentence reduction." *United States v. Whitworth*, No. 1:23-CR-561-4, 2023 WL 8190131, at *2 (N.D. Ohio Nov. 27, 2023). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury;" (5) "other reasons" similar to those in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

The § 3553(a) factors to be considered include the prisoner's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and

4

circumstances of his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing

§ 3553(a)(1)–(2)).

> Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.

*United States v. Pooler*, No. 3:18-CR-00137, 2020 WL 7046964, at *5 (S.D. Ohio Dec. 1, 2020)

(citing *Jones*, 980 F.3d at 1114; *United States v. Ruffin*, 978 F.3d 1000, 1008-09 (6th Cir. 2020);

*see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.]

section 3553(a) to the extent that they are applicable"). But post-sentencing rehabilitation, standing

alone, "does not rise to the level of an extraordinary and compelling reason for granting

compassionate release." *United States v. Harper*, No. 22-1291, 2023 WL 10677931, at *3 (6th Cir.

Dec. 12, 2023); *Jackson*, 2023 WL 9023349, at *2 (citing *Ruffin*, 978 F.3d at 1004).

The defendant bears the burden of establishing that he is entitled to a sentence reduction

under 18 U.S.C. § 3582. *See United States v. Karr*, No. 6:17-CR-25-REW, 611 F.Supp.3d 395,

2020 WL 774363, at *6 (E.D. Ky. Feb. 18, 2020).

### 1. *Extraordinary And Compelling Justification for Compassionate Release and Consistency with United States Sentencing Policy Statement.*

#### a.   Unusually Long Sentence

Brooks first argues that he is serving an "unusually long sentence" because his 18 U.S.C.

§ 924(c) offences for possessing a firearm were "stacked." The First Step Act eliminated the practice of stacking § 924(c) charges in a first offense; now, the imposition of stacked 20-year mandatory minimum sentences is only permitted "[i]n the case of a violation of [924(c)] that occurs after a prior conviction under this subsection has become final." 18 U.S.C. § 924(c); see also Pub. L. No. 115-391 § 403(a). The First Step Act, however, does not generally provide retroactive relief for those who were sentenced before its effective date. *See United States v. Richardson*, 948 F.3d 733, 748-49 (6th Cir. 2020).

In *United States v. McCall*, the Sixth Circuit considered whether nonretroactive changes might be considered "extraordinary and compelling circumstances." 56 F.4th at 1048-1055. Sitting *en banc*, the court held that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis." *McCall*, 56 F.4th at 1065; *see generally United States v. Ruvalcaba*, 26 F. 4th 14, 27 (1st Cir. 2022) ("[I]f a district court were to reduce a sentence solely because . . . [a statute's] non-retroactive amendments would have lowered a defendant's sentence, it might be seen as substituting its own judgment on retroactivity for Congress's judgment."). In other words, Congress did not intend for those who had already been convicted of multiple offenses under § 924(c) to be resentenced under this change in law. However, *McCall* notes that the Sentencing Commission might amend its policy in the future, which it has now done as explained below. *McCall,* 56 F.4th at 1054, 1060, n. 3, n.5.[2]

Since *McCall*, the Sentencing Commission regained its quorum and issued, among other provisions, § 1B1.13(b)(6). Under U.S.S.G. § 1B1.13(b)(6), the United States Sentencing

---

[2] *McCall* noted that "Congress has delegated to the Commission the task of 'describ[ing] what should be considered extraordinary and compelling reasons . . . ' 28 U.S.C. § 994(t). Whether the Commission could issue a new policy statement that describes 'extraordinary and compelling reasons' in a way that is inconsistent with our interpretation of the statute's language is a question that we need not resolve in the absence of an applicable statement . . ." *McCall*, 56 F.4th at 1054, n.3.

Commission indicates that unusually long sentences can be considered extraordinary and compelling circumstances under the following conditions:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Thus, an extraordinary and compelling reason for a sentence reduction may exist where (1) a defendant has served 10 years of (2) an unusually long sentence and (3) a change in the law has produced a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed[.]" § 1B1.13(b)(6).  If those items are met, the Court must give "full consideration of the defendant's individualized circumstances," as to whether they warrant a reduced sentence. § 1B1.13(b)(6).

In discussing the "unusually long sentence" the Sentencing Commission notes: "[D]ata show that between fiscal year 2013 and fiscal year 2022, fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer." U.S. Sent'g Comm'n, Amendments to the Sent'g Guidelines 60 (2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf (last visited February 5, 2025). And while there is no set number or bright line rule for what constitutes an unusually long sentence, Courts have determined a sentence is "unusually long" where there is a "gross disparity" between the original sentence and what it would be today. In addition, the Court can consider what percentage of the overall sentence a certain charge comprises versus the proportion that charge would be if sentenced for the same

crimes today. *See United States v. Ware*, 720 F. Supp. 3d 1351, 1363 (N.D. Ga. 2024) (finding sentence unusually long where penalty for 924(c) charges originally accounted for 80% of the original sentence, but if sentenced today would only account for 25% of the sentence). Court have also considered data from the Sentencing Commission in determining a sentence is unusually long. *United States v. Allen*, 717 F. Supp. 3d 1308, 1317 (N.D. Ga. 2024) (discussing Judiciary Sentencing Information ("JSIN") data).

A gross sentencing disparity exists when such disparity is "glaringly noticeable." *Allen*, 2024 WL 631609, at *6 (noting that "[w]hat rises to the level of a 'gross disparity' is not strictly defined."). Courts in this district have found unusually long sentences extraordinary and compelling under the policy in § 1B1.13(b)(6). *See United States v. Cornell*, No. 1:03-CR-00431-2, 2024 WL 3532924, at *5 (N.D. Ohio July 25, 2024), on reconsideration in part, No. 1:03-CR-00431-2, 2024 WL 4142686 (N.D. Ohio Sept. 11, 2024) (Holding there is a gross disparity between life and 250 months, thus an unusually long sentence supported finding of extraordinary and compelling reasons to reduce sentence); *United States v. Bricker*, No. 1:05 CR 113, 2024 WL 934858, at *2 (N.D. Ohio Mar. 5, 2024) (finding a sixteen-year disparity between sentence in 2006 and the upper end of the sentence defendant would receive today an extraordinary and compelling reason justifying early release); *United States v. Brooks*, No. 3:07-CR-51-TAV-JEM-5, 2022 WL 17814192 (E.D. Tenn. Dec. 19, 2022) (reducing the defendant's sentence to time served even though the case was serious because the defendant's excessively long sentence from 924(c) stacking, age, and rehabilitation lessened the likelihood of reoffending).

And if the Court determines a compelling and extraordinary reason supports reducing Brooks' sentence, its discretion is not constrained in fashioning the appropriate sentence, even by mandatory minimums. *See, e.g., Osman v. United States,* No. 10-CR-57, 2023 WL 3765246, at *4

(E.D. Va. June 1, 2023) ("Simply put, compassionate release applies to all offenses and all defendants. Accordingly, the Court has the authority to reduce a sentence below the mandatory minimum."); *United States v. Rollins*, 540 F. Supp. 3d 804, 814 (N.D. Ill. 2021) (noting that the government did not dispute that § 3582(c)(1)(A) "empowers the court to reduce a sentence below the applicable statutory minimum").

Here, assuming the above policy statement is controlling, there is no dispute that Brooks has served over 27 years, satisfying the 10-year requirement, and that there has been a change in the law under the First Step Act. [DE 707 at 2283]. The question is whether the change in law produced "a gross disparity between the sentence being served and the sentence" Brooks would receive today.

When sentenced in 1998, Brooks received a sentence of 2242 months or approximately 186 years. In 1998, 1,920 months or 160 years of his sentence were based on his § 924(c) convictions. His guideline range for his robbery convictions was 210 to 262 months. [DE 299 at 1568]. He was sentenced at the upper end of the guideline to 262 months, which is approximately 22 years. [DE 306]. The United States concedes that if Brooks were sentenced today, he would be subject to a mandatory 5-year consecutive sentence for each § 924(c) conviction, which would be 45 years. [DE 705 at 2050]. Today Brooks would be still subject to the original sentence on the bank robbery convictions, which was approximately 22 years. [DE 301, Judgment]. Thus, today Brooks would be subject to a 67-year sentence, not a 186-year sentence. The sentence today would be 119 years less than in 1998. A 119-year difference in sentence amounts to a gross disparity under § 1B1.13(b)(6).

According to the JSIN data, during the last five fiscal years (FY2019-2023), there was an insufficient number of defendants (1) whose primary guideline was §2B3.1 and who were

convicted of at least one count of 18 U.S.C. § 924(c), with a Final Offense Level of 35 and a Criminal History Category of III, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) who received a sentence of imprisonment in whole or in part. But despite the lack of JSIN data, the Court also considers Brooks' potential age at the time of release in relation to recidivism rate. According to United State Sentencing Commission data, Recidivism is greatly reduced after the age of sixty. *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/RG-recidivism-overview.pdf (last accessed February 7, 2025).[3]

In short, there is a 119-year different in Brooks' original sentence and the one he would receive today based solely on the guidelines and mandatory minimums. Thus, the Court finds Brooks' unusually long sentence is grossly disparate, and the addresses Brooks' "individualized circumstances" below to determine whether they combined with his extraordinarily lengthy sentence warrant a reduced sentence.

    a.  Age at the Time of the Offense

Brooks was just twenty years old at the time he committed these bank robberies. He submits his young age is an extraordinary and compelling justification for release. [DE 707]. First, Brooks' age was known to the sentencing court at the time of sentencing. [DE 301, DE 299, PSR at 1566]. As such, Brooks' young age at the time of committed these offenses is not a new development. The Sixth Circuit has held that facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction. *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) ("Facts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction."). Because Brooks' age at the time of the offenses was known and considered by the

---

[3] According to this data, just 16.0% of offenders older than 60 years of age at the time of release were rearrested.

Court, it does not alone justify early release. *Hunter*, 12 F.4th at 563 & n.3. Nonetheless, Brooks' young age at the time of the offense may be considered in combination with other factors. *United States v. Bolden*, No. 3:98-CR-107-CRS, 2021 WL 2228060, at *6 (W.D. Ky. June 1, 2021) (reducing a sentence based on defendant's "age at the time of his offense, his rehabilitation since being incarcerated, the incredible length of the mandatory-minimum sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment"); *United States v. Baker,* No. 10-20513, 2020 WL 4696594, at *4 (E.D. Mich. Aug. 13, 2020) (reducing a sentence based on defendant's "remarkable record of rehabilitation, his relative youth at the time of his offense, the length of his sentence, and the disparity between his sentence and those sentenced for similar crimes after the First Step Act"). As a result, the Court does consider this a factor supporting a sentence reduction in combination with his unusually long sentence.

b. <u>Caregiver Status</u>

Brooks asserts that he is needed as a full-time caretaker for his younger brother [DE 707 at 2117], and that is an "extraordinary and compelling" reason warranting early release. Brooks asserts that his brother is addicted to drugs, has mental health issues, is homeless, and that the situation is further deteriorating. [*Id.*] He asserts there are no other family members who can care for him. [*Id*. at 2118]. He explains that as long as his brother's mother was around to help his brother take his mediation, he was ok. [*Id*. at 2117]. His motion does not specify why his brother's mother is no longer able to provide care.

Early release may be warranted if a defendant's immediate family member is "incapacitat[ed]" and the defendant is the only available or suitable caregiver. § 1B1.13(b)(3); *United States v. Mathews*, No. 2:19-cr-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023) (defendant bears burden to make this showing). Immediate family members include children,

spouses and partners, parents, grandchildren, grandparents, and siblings. § 1B1.13(b)(3)(D). The Guidelines also allow for care of individuals who, though not immediate family members, have a "similar in kind" relationship with the defendant. *Id.*

In evaluating "incapacitation," courts have looked to the BOP guidelines for handling inmate compassionate release requests based on the incapacitation of a family member. *See, e.g., United States v. Walker*, 2024 U.S. Dist. LEXIS 25188, at *8 (D.N.J. Feb. 13, 2024); (*United States v. Collins*, 2020 U.S. Dist. LEXIS 5001, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020). The BOP guidelines have defined incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [individual] . . . is completely disabled, meaning that the [individual] . . . cannot carry on any self-care and is totally confined to a bed or chair." *Walker*, 2024 U.S. Dist. LEXIS 25188, at *8 (quoting *Collins*, 2020 WL 136859) (citing BOP Program Statement § 5050.502)). When evaluating the incapacitation, adequate information and documentation should be provided including, but not limited to, a statement and verifiable medical documentation regarding incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the family member, and a statement and documentation regarding the inmate's release plan. *Collins*, 2020 WL 136859, at *4 (citing *United States v. Gutierrez*, 2019 WL 2422601, at *3 (D.N.M. 2019) and BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at *1).

The question for the Court is whether Brooks has offered evidence as to his brother's incapacitation and whether he is truly the only option to take care of her brother. First, the record is devoid of any information substantiating that Brooks' brother is incapacitated.  The Bureau of Prisons' Guidance on Compassionate Release has defined incapacitated as follows:

Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [brother] is completely disabled, meaning that the [brother] cannot carry on any self-care and is totally confined to a bed or chair; or A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [brother's] mental capacity or function), but may not be confined to a bed or chair.

Federal Bureau of Prisons, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) 10 (2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  Brooks has provided no medical records or documentation. Thus, there is no evidence in the record does to support incapacitation.

Second, nothing in the motion addresses whether Brooks is truly the only option available to care for his brother.  The PSR indicates that he has a sister and another brother in addition to the brother at issue. [DE 299 at 1566]. It is also not clear why his brother's mother is no longer available.  Brooks asserts his sister's job prevents her from helping and that his other brother has a medical condition preventing him from caring for him. [DE 707 at 2118]. But the motion does not address other supplemental sources of care his brother, or whether he qualifies for other care services.  *Collins*, 2020 WL 136859, at *4; *United States v. Hill*, No. 5:18-CR-50022, 2020 WL 3037226, at *3 (W.D. Ark. June 5, 2020).  These factors are fatal to Brooks argument and the Court cannot not find that the cited policy statement applies to create an extraordinary and compelling circumstance. *United States v. Corley*, No. 3:13-cr-00097-9, 2021 WL 119640, at *1 (M.D. Tenn. Jan. 13, 2021) ("There is simply no factual predicate for the Court to find that []family circumstances constitute extraordinary and compelling grounds for compassionate release, which typically requires a finding that the Defendant is the only available caregiver."); *United States v. Marshall*, No. 3:16CR-00004-JHM, 2020 WL 114437, at *3 (W.D. Ky. Jan. 9, 2020) (denying compassionate release when the record did not reflect incapacitation or lack of other caregivers).

13

While the Court is sympathetic to Brooks' brother's situation and his desire to help, there is simply not enough support in the record to substantiate Brooks' claims or sufficient grounds to find exceptional circumstances. *See United States v. Akram*, 568 F. Supp. 3d 295, 298 (W.D.N.Y. 2021) ("Unfortunately, families often suffer due to the criminal conduct and subsequent incarceration of one of their members, and Defendant's family is likely no exception to this harsh reality.").

b.  Rehabilitation

Brooks submits his rehabilitation and good disciplinary history are exceptional and compelling circumstances warranting release. [DE 707 at 2113].  While rehabilitation by itself cannot serve as independent reason for compassionate release, it can be considered in concert with other circumstances. *Lawrence v. United States*, 570 F. Supp. 3d 524, 529 (W.D. Ky. 2021) ("rehabilitation is specifically excluded as an independent basis for compassionate release."); *United States v. Wieber*, Case No. 3:14-CR-74-TBR, 2020 WL 1492907, at *3 (W.D. Ky. Mar. 27, 2020) (collecting cases holding that rehabilitation is not a sufficient basis for compassionate release). Brooks contends he has maintained steady employment for over a decade, made consistent restitution payments, engaged in re-entry programs, including the "Challenge Program," which a cognitive-behavioral treatment program, as well as serving in a mentoring program. [DE 707 at 2115-17]. Brooks asserts his efforts have continued despite denials of past release motions and a life sentence.  Brooks submits if released he will work in cooking or as a truck driver as he has obtained his CDL and Culinary Arts Certification. [DE 707 at 2116]. He also submitted numerous letters in support of his motion from BOP Staff, and family and friends. [DE 707-1 at 2126-2162].  In addition, the United States agrees that Brooks has not had "a significant disciplinary infraction since his possession of a cellular phone in 2009 and an assault in 2007." [DE 708 at 2284]. The Court acknowledges these efforts and commends his drive to pursue higher

14

education, other laudable endeavors, and generally good disciplinary history. The Court applauds these actions, and they are another individualized circumstance that, considered in combination, support reducing Brooks' sentence.

In short, Brooks' unusually long sentence is grossly disparate when compared to the sentence he would receive today. This combined with his young age at the time of the offense, and rehabilitative efforts, demonstrate extraordinary and compelling circumstances supporting reducing his sentence.

### 2.   *Sentencing Objectives In 18 U.S.C. § 3553(a).*

This Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 2020 WL 6817488, at *11.  Under § 3553(a), there are seven factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kind of sentences available; (4) the kinds of sentence and the sentencing range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C.S. § 3553. A court need not "specifically articulat[e]" every single Section 3553(a) factor in its analysis. *Jones*, 2020 WL 6817488, at *11.  Instead, the record "as a whole" must confirm that the pertinent factors were considered by the court.  *Id.*  For a reviewing court, the record as a whole will constitute both the original sentencing proceeding and the compassionate release decision. *Id*. at *11–12.

Turning to the nature and circumstances of Brooks' offenses, Brooks' crimes involved robberies and possession of firearms, and the events included threatening of victims' lives.  [DE 299, PSR, at 1547-54].  Brooks was the only defendant in the case charged in each of the nine

15

separate bank robberies that took place over six months. [DE 299, PSR, at 1547, ¶ 21]. During the first bank robbery, Brooks foot kicked a bank teller in the chest, and had his weapon drawn, pointing at customers and tellers. [DE 299, PSR, at 1547, ¶ 23]. During the second bank robbery, Brooks was armed with a semiautomatic pistol, which he pointed at the tellers. [DE 299, PSR, at 1548, ¶ 26]. During the third bank robbery, Brooks was armed with a semiautomatic handgun, which he pointed at a teller and grabbed a second teller and pushed her toward the vault. [DE 299, PSR, at 1549, ¶ 29]. During the fourth robbery, Brooks, with his weapon pointed at a teller's head, yelled at a teller "what are you doing, bitch? Do you want to die?  I'll kill you!" [DE 299, PSR, at 1549, ¶ 32]. During the fifth robbery, Brook was armed with a loaded, sawed-off shotgun, which he pointed at tellers during the robbery, and cursed at a teller. [DE 299, PSR, at 1550, ¶ 38]. During the sixth robbery, Brooks was armed with a semiautomatic pistol, which he pointed at the branch manager, and waived his pistol at two other bank employees, telling them to hurry up or he would shoot them. [DE 299, PSR, at 1551, ¶ 42]. During the seventh robbery, Brooks was armed with a long-barreled handgun, which he pointed at the branch manager's head, while instructing him to open a drawer in the vault and angerly slammed the gate of the vault, leaving the branch manager inside. [DE 299, PSR, at 1550-51, ¶ 45].   During the eighth robbery, Brooks was armed with sawed-off shotgun, which he aimed at individuals inside the bank, and asked a teller to open the vault or he would kill her. [DE 299, PSR, at 1552, ¶ 50].   During the final robbery, Brooks aimed his firearm toward individuals inside the bank. [DE 299, PSR, at 1553, ¶ 53].  Brooks' crimes were serious, caused fear and trauma to his victims [DE 299, PSR, at 1571], and his role as organizer or leader in the offense weigh against sentence reduction.

The court also considers the history and characteristics of the defendant. Before this case Brooks had previously been charged with several crimes, including trafficking a controlled

substance, possession of drug paraphernalia, and possession of marijuana. [DE 299 at 1564]. Moreover, Brooks had pending charges of murder, robbery, wanton endangerment, trafficking a controlled substance, carrying a concealed weapon, and wanton endangerment at the time he was charged in this case. [*Id*. at 1565, ¶ 162-64]. On the pending murder charge, Brooks was alleged to have murdered the victim after a robbery. [*Id*.]. As discussed above, Brooks has made laudable rehabilitation efforts despite his life sentence. His disciplinary history over the course of his years in prison are generally good are further evidence of rehabilitation. Nonetheless, he may still pose some danger to the community despite being tempered by his rehabilitation.

While the sentencing court reviewed these factors again in denying Brooks' previous request for sentence reduction and concluded the § 3553(a) factors did not support release, it has been several years since that decision. Brooks has continued to make personal progress despite his requests for release being denied.

The Court has considered the § 3553(a) factors and finds that they counsel for some amount of sentence reduction, but not the extent sought by Brooks. The need to avoid sentence disparities coupled with other factors including Brooks' rehabilitation and length of time served support a sentence reduction.

\* \* \*

For the reasons above and using the Sixth Circuit's standard of full discretion as explained in *Jones*, Brooks has shown extraordinary or compelling reasons to alter his sentence. 2020 WL 6817488, at \*7-9. If sentenced today, Brooks would be subject to a mandatory 45 years on the 924(c) charges. Today, Brooks would be subject to a 67-year sentence when adding his 924(c) sentence to the sentence he would have been given under the guidelines for his robbery convictions, which are to be served consecutive his 924(c) sentence. Neither Brooks nor the United

States argue that guideline range would be different today. There is no on-point JSIN data for the Court to consider. But Commission data demonstrates the potential for recidivism is greatly reduced after age 60. Brooks would be nearly 70 at release after being institutionalized for almost five decades beginning at age 20. Thus, considering all § 3553(a) factors and other factors enumerated above, the Court concludes a sentence of 48 years is reasonable under the circumstances and complies with the objectives of § 3553(a). Thus, the Court will reduce Brooks' sentence from 186 years to 48 years or 576 months.

### III.    CONCLUSION

Because Brooks has satisfied his burden for sentence reduction for the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Brooks' Motion for to Reduce Sentence [DE 707] is **GRANTED in part** as set forth above and Brooks' Motions to Supplement [DE 731, DE 732] are **GRANTED**. Brooks' sentence is reduced from 186 years to 48 years or 576 months.

Rebecca Grady Jennings, District Judge
United States District Court

February 7, 2025

Cc:    Defendant, pro se